# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGHAN GEORGE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SHAMROCK SALOON II, LLC dba CALICO JACK'S CANTINA; BLITZ MARKETING, LLC; JOHN L. SULLIVAN; and DOES 1 through 20, inclusive, and each of them,<br><br>Defendants. | Case No.: 1:17-cv-06663-RA<br><br>**CLASS ACTION** |

## DECLARATION OF JOHN P. KRISTENSEN IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

- 1 -

## DECLARATION OF JOHN P. KRISTENSEN

I, John P. Kristensen, based on my own experience and knowledge, hereby declare as follows:

1. I am an attorney licensed to practice before all Courts in the State of California, the United States District Courts for the Southern District of California, Northern District of California, Eastern District of California, Central District of California, District of Colorado, Eastern District of Wisconsin, and Western District of Wisconsin. I am also admitted to the U.S. Court of Appeals for the Ninth Circuit. I have been admitted *Pro Hac Vice* in this matter. I am the Managing Partner at Kristensen LLP, counsel of record for plaintiff Meghan George ("Plaintiff") in this action. I have been appointed as Class Counsel by this Court. I make this declaration of my own personal knowledge, and if called to testify, I could and would competently testify hereto under oath.

2. Attached hereto as **Exhibit A** is the Settlement Agreement executed by Plaintiff and myself. Defendants' counsel has informed me that Defendants' executed version is forthcoming. When it is received, it will be filed as a supplement to this Motion.

3. Judge Pitman conducted a discovery conference with the parties on May 16, 2018 and entered an Order granting the terms of the parties' stipulated protective order on May 17, 2018 (Dkt. 36) and an Order requiring that: (1) Defendants produce documents on May 16, 2018; (2) Plaintiff produce the records it received from Defendants' Call Fire account, the software system they utilized to transmit text messages to consumers; (3) Sullivan appear for deposition on May 17, 2018; and (4) Shamrock Saloon and Blitz Marketing produced their 30(b)(6) witnesses for deposition on May 25, 2018. (Dkt. No. 35) The parties exchanged documents per the Court's Order on May 16, 2018 and the depositions of the 30(b)(6) witnesses and Sullivan were completed on May 17, 2018.

4. Plaintiff served Call Fire with a deposition subpoena for testimony and production of documents for May 1, 2018. Plaintiff sought the production of call logs showing the number of text messages sent on behalf of Defendants and testimony to authenticate the records and

discuss the facts surrounding the technology and software platform used to send the text messages. Call Fire through counsel objected on the grounds that it was unduly burdensome and equally available as the information could be obtained directly through Defendants. Call Fire did produce an excel spreadsheet showing that approximately 84,000 text messages were delivered during a one month period in August of 2017. A copy of the spreadsheet was produced to Defendants' counsel per the Court's Order of May 16, 2018.

5. Shamrock Saloon's 30(b)(6) witness, Pamela Killian, however, had never used the Call Fire portal and was unable to provide testimony regarding how the software system works, how numbers are stored and what steps are taken to send text messages, despite this being a topic requested in Plaintiff's 30(b)(6) deposition notice. On June 1, 2018, the Court granted the parties' Joint Motion to Extend Discovery deadlines to September 14, 2018. Dkt. 38. Defendants took Plaintiff's deposition on June 27, 2018.

6. In their discovery responses and document production, Defendants did not produce the list of individuals who signed up through their website and the online forms which would indicate whether such individuals were provided with consent language. Plaintiff believed that this information should be accessible to Defendants through their website and should have been produced in discovery and pursuant to the Court's Order of May 16, 2018. Defendants claimed that they were unable to produce the list of individuals who signed up through their website and the online forms which would indicate whether such individuals were provided with consent language because their website was managed by a third party, AYC Media.

7. Plaintiff filed a request for an informal discovery conference on August 16, 2018 seeking production of the list of individuals who allegedly provided Defendants consent to contact them via text message through its website as well as a further 30(b)(6) deposition of a witness with knowledge regarding Defendants' Call Fire account, how phone numbers are entered into the portal, stored and maintained, and the steps taken to send messages to recipients. Dkt. 44. Judge Pitman scheduled an informal discovery conference on these issues for September 11, 2018.

8. The parties took the deposition of Tony Kindness of AYC Media on September 6, 2018 and the data identifying the phone numbers for which Defendants obtained consent through their website was produced by Mr. Kindness on September 13, 2018.

9. On September 11, 2018, the Court adjourned the post-discovery conference to September 28, 2018.

10. The parties participated in an informal discovery conference with Judge Pitman on September 11, 2018. Plaintiff's request for sanctions or further relief with respect to the production of persons who consented to receive text messages from Defendants' website was denied. Plaintiff's request for another deposition of a 30(b)(6) witness of Defendants was denied based on the parties' representation that in lieu of a deposition, Defendants would provide access to its Call Fire account and that the parties would stipulate to the authenticity of the data accessible through Defendants' Call Fire account, thus making a deposition on these issues unnecessary. The Court also scheduled a settlement conference for October 9, 2018 and continued the deadline for the completion of fact discovery to November 30, 2018 and expert discovery to January 15, 2019. Dkt. 52.

11. On September 21, 2018, the Court adjourned the post-discovery conference to January 25, 2019.

12. The parties participated in a settlement conference on October 9, 2018 and the matter did not resolve.

13. On November 14, 2018, the Court issued an Order based on the parties' submitted stipulation as to the authenticity of all data maintained, accessed to, and obtained by the parties on Shamrock Saloon's Call Fire account, including that Defendants inputted, stored, and saved the phone numbers on the account, that Defendants drafted and created the text messages to be delivered, that it scheduled and requested text messages to be delivered to the phone numbers and recipients identified by their Call Fire account and that Defendants have no information or knowledge to suggest that the text messages were not sent and relied on Call Fire's software to transmit the text messages to the identified recipients. Dkt. 56.

14. Plaintiff filed her Motion for Certification on December 21, 2018. Dkt. 57. When the Motion was fully briefed, the Court referred the Motion to Magistrate Judge Pitman, who issued the Report and Recommendation granting Plaintiff's Motion. Dkt. 84. Defendants filed Objections [Dkt. 85] and Plaintiff responded [Dkt. 88]. On January 13, 2020, the Court issued its Order Adopting Report and Recommendation [Dkt. 94]. The Court ordered the matter to mediation. A mediation session was held on June 18, 2020 with Charles Newman, Esq., which was adjourned to allow Defendants to procure financial statements to aid in the settlement process.

15. Through Mr. Newman's help and tireless efforts, documents were exchanged for settlement purposes only that helped the parties reach a settlement, and notified the Court of the settlement on October 13, 2020. Dkt. 114.

16. The Settlement pertains to the Class which the Court has already certified on January 13, 2020 [Dkt. 94] and consists of 67,630 individuals (1) to whom Defendants sent promotional text messages between March 26, 2015 and September 1, 2017 using an automated dialing system and (2) from whom Defendants cannot affirmatively show that they received prior express written consent to receive such text messages.

17. The Settlement also requires Defendants to pay for Class Counsel's fees and costs in prosecuting this matter, an Incentive Award to Plaintiff, and the Settlement Administration costs, for a total of $325,000.00. The COVD-19 pandemic has severely impacted Defendants' industry and businesses such that Defendants' restaurants, including Calico Jack's, is closed and has been closed during the pandemic causing the business and Defendants to lose money and face an uncertain financial future. Class Counsel was informed that prior to COVID-19, Mr. Sullivan owned five bars in New York City and was an investor in a number of bars across the country, but that as a result of COVID-19, four of the five bars have permanently closed and have evacuated their respective premises, including Calico Jack's. Those businesses have been permanently shut down, all staff were laid off, and the keys to each of the restaurants was turned in, with neither any ability nor any intention to reopen.

18. As a result, Defendants have agreed to an injunction for the benefit of the Class to prevent any further communication with them that violates the TCPA and has agreed to improve, update, and ensure Defendants' TCPA procedures are in writing and applicable to any third party. The injunctive relief benefits the Class as well as the general public.

19. The Settlement requires substantial injunctive relief aimed at preventing future unwanted communication to consumers nationwide. To this end, the Settlement provides for Defendants to delete and cease all communications to Class Members, for which it has already been determined that Defendants do not have consent to contact pursuant to the TCPA. In addition, the Settlement provides for Defendants to scrub their database for any numbers included in the National Do Not Call Registry and to prepare and implement TCPA compliance procedures to ensure that members of the general public are not contacted unless they have provided prior express consent. Furthermore, Defendants would also have to ensure that any third party they contracted with to effectuate text message complaint would also abide by the written TCPA compliance procedures.

20. This injunctive relief seeks to provide substantial immediate relief to all Class Members and the general public as Defendants' alleged unlawful practices would end and strict compliance with TCPA requirements will be implemented and put into practice. The injunctive relief provided for in the Settlement would ensure that the goals of the TCPA were put into practice and honored as intended.

21. The Settlement provides that Class Members who do not request exclusion from the Settlement will release any and all claims, known or unknown, against the Releasees based on TCPA violations.

22. Under the terms of the proposed Settlement, Class Members will have the right to opt out of the Settlement or object to its terms. A Class Member who wishes to opt out of the Settlement must, no later than 30 days after the Class Notice Date, submit an opt-out request via the method provided for in the Class Notice. A Class Member who does not opt out and who wishes to object to the Settlement may do so by filing with the Court and mailing to counsel for

the Parties, no later than 30 days after the Class Notice Date, a notice of objection and/or request to be heard at the Final Approval Hearing. Any such notice must include the case name and number, the Class Member's name and contact information, a statement of all grounds and legal support for the objection and copies of any supporting documentation, a list of other cases in which the Class Member has objected to a class action settlement.

23. The Settlement contemplates that Class Counsel will request an Incentive Award in the amount of $5,000.00 for the Class Representative, subject to Court approval. Defendants have agreed not to oppose this request and the failure of the Court to award the requested incentive fees and/or costs is not a ground to void the Agreement.

24. The Settlement contemplates that Class Counsel may apply to the Court for an award of attorneys' fees (plus reimbursement of costs). Defendants have agreed not to oppose an application by Class Counsel for an award of attorneys' fees and costs, and the failure of the Court to award the requested attorney's fees and/or costs is not a ground to void the Agreement.

25. As this Court is aware from the Docket, this matter was highly contested and disputed. While both sides strongly believe in the merits of their respective claims, there are inherent risks to both sides in continuing the Litigation. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class. As a result, Class Counsel supports the Settlement and seek its Preliminary Approval.

26. Similarly, Defendants believe that they have strong and meritorious defenses not only in the Litigation as a whole, but also as to the amount of damages sought. However, Defendants recognize that there are inherent risks and costs associated with protracted litigation especially considering that a Class has been certified. The negotiated Settlement reflects a compromise between Defendants in avoiding the risks and costs associated with protracted litigation and. Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation.

27. Plaintiff and Defendants engaged in extensive discovery, including the review of

documents, depositions, including Defendants' Rule 30(b)(6)'s witnesses and employees, and consultation with expert witnesses, and pursuance of third party discovery via subpoenas. Class Counsel and Defendants' counsel are experienced in complex class actions and with the help of Mr. Newman, the parties were able to reach a settlement after months of discussions. This Settlement is procedurally fair.

28. This case is no exception to this rule, with more than 60,000 Class Members and significant legal disputes over the merits. Although the parties have already undertaken considerable time and expense litigating this matter, further litigation without settlement would necessarily result in additional expense and delay especially in these uncertain times. There would be further fact discovery, depositions, expert discovery, all at significant cost to the parties. A complicated trial would also likely be necessary, if one could even move forward given the COVID-19 pandemic. Given the electronic nature of the claims, extensive electronic discovery, including additional use of experts, will be necessary. Preparing and adducing evidence on the complex factual and legal issues at such a trial would consume vast amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the dispute. Any judgment would likely be appealed, thereby extending the duration of the litigation. The Settlement, on the other hand, makes meaningful relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

29. Notices of the settlement and its details have not yet been issued to the Class. At this early stage in the process, Plaintiff's agreement to the terms of settlement weighs in favor of preliminary approval.

30. Through Court-appointed mediator Charles Newman, an experienced mediator and arbitrator, the Parties held several Zoom conferences and calls, which at all times were at arm's length and adversarial in nature. Significantly, it required months of settlement negotiations before the parties arrived at a settlement in principle, with each party initially rejecting the other's offers of settlement.

31. Although Plaintiff believes her case is strong, it is subject to considerable risk as to liability and damages, including the potential of decertification. A trial would involve significant risks to Plaintiff because of the fact-intensive nature of proving liability under the TCPA, especially when *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) raised new, as-yet unresolved questions about the definition of an autodialer under the TCPA.

32. Plaintiff believes that she could ultimately establish Defendants' liability, but recognizes that this would require significant development of the factual record. Plaintiff's counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain, even in times when a global pandemic is not an issue. The proposed settlement alleviates these uncertainties, which weighs heavily in favor of preliminary approval.

33. While this matter was certified as a class action, Defendants disputed the certification and if the litigation were to proceed, it is likely that Defendants would raise similar arguments through the end of discovery in a dispositive motion to decertify the Class. There is no guarantee that the Class will be maintained during trial. This factor favors preliminary approval.

34. Given that the Class consists of over 60,000 members with several violations, statutory penalties under the TCPA would be astronomical. Such liability would either never be translated into meaningful relief or result in annihilating damages. Given the current global pandemic and the uncertainty of Defendants' restaurants/bars opening with any regularity unknown, Defendants' ability to provide greater relief is suspect, even if a greater judgment is obtained at trial.

35. Defendants have agreed to settle this case for a total of $325,000.00, including attorneys' fees, costs, Incentive Award, and Settlement Administration Costs. In addition, Defendants have agreed to a significant injunctive relief that would honor the TCPA and ensure that Defendants would not contact the Class Members and the general public without prior express consent. Moreover, Defendants would prepare and update its written TCPA policies and

procedures to inform their employees and any third party they contract with for messaging campaigns. Given the nature of the alleged injuries, such relief is equitable, representing a good value given the attendant risks of litigation.

36. The Proposed Notice here satisfies each of these requirements. It provides direct mailed notice to Class Members for whom addresses can be found from the phone numbers, which directs Class Members to a website. Both the mailed Notice and the Settlement Website provide the following information: the terms of the settlement, information regarding the allocation of attorneys' fees, and specific information regarding the date, time, and place of the final approval hearing. Accordingly, the detailed information in the Proposed Notice, and the multiple methods by which class members will receive, and gain access to, the settlement terms and their options therein are more than adequate to put Class Members on notice of the proposed settlement and are well within the requirements of Rule 23(c)(2)(B). The Proposed Notice far exceed this bare minimum and fully comply with the requirements of Rule 23(c)(2)(B).

37. The Settlement Agreement provides that a notice will be transmitted via mail searched from Class Members' phone numbers based on reverse lookup methods common in TCPA class settlements as that is the only contact information the Parties have for the Class Members.

38. The Proposed Notices contain information about how to exclude oneself and/or object to the settlement. Class Members will have 30 days from the date of sending to submit opt-out requests or object to the settlement.

39. Likewise, the Court should preliminarily approve the releases of claims in the Settlement Agreement. Those releases were bargained for at arms-length and are part of the compromise vigorously negotiated and consummated in exchange for the Settlement. The language of the releases is fair and effectuates the release of claims asserted in this litigation.

40. Plaintiff proposes that the Court appoint Postlethwaite & Netterville ("P&N") to serve as the Settlement Administrator. P&N specializes in providing administrative services in class action litigation, and has extensive experience in administering consumer protection and

privacy class action settlements. Defendants do not oppose this request.

41. The last step in the settlement approval process is the formal fairness or Final Approval Hearing, at which time the Court will hear all evidence and argument, for and against, the proposed Settlement. Plaintiff requests that the Court grant preliminary approval of the Settlement and schedule a Final Approval Hearing to be held not before 70 days after the date of entry of the Preliminary Approval Order, in order to allow sufficient time for providing Class Notice, and to allow Class Members time to submit exclusion requests and objections. Class Counsel propose the following schedule:

| EVENT | TIMELINE |
| --- | --- |
| Deadline for the Completion of Notices | 30 Days after Defendants provide the Class List (following Preliminary Approval) |
| Deadline for Final Approval Hearing | 70 Days or more after preliminary approval |
| Deadline for opting-out of the Settlement and for submission of Objections | 30 Days after the initial issuance of the Notices to Class Members |

## QUALIFICATIONS OF COUNSEL

42. Plaintiff and the Class are represented by counsel experienced in complex class action litigation. Class Counsel has extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection. Class Counsel believes that the Settlement is fair, reasonable, and adequate. Their opinions should be given deference by the Court. I am currently the Managing Partner at Kristensen LLP.

43. I have also been admitted pro hac vice for the United States District Court for Idaho, Oregon, Arizona, Minnesota, the Southern District of Florida, the Southern District of New York, the Northern District of Texas, the Western District of Virginia as well as two complex helicopter fatality cases in Arizona State Court.

44.     I graduated from Washington & Lee University School of Law in Lexington, Virginia in 2002 where I received an academic scholarship. Upon graduation, I moved back to Los Angeles and quickly gained admission to the California bar. I began my civil career at Daniels, Fine, Israel, Schonbuch & Lebovits, LLP in Century City. I then spent four years at a multi-disciplinary practice, Avila & Peros, LLP.

45.     In 2008, I accepted employment at a firm, O'Reilly & Danko, which subsequently changed its name to O'Reilly || Collins. The firm was one of the preeminent plaintiffs' law firms in the country obtaining numerous seven and eight figure verdicts and settlements during my tenure.

46.     In 2011, I was responsible for a then record and maximum fine against an automotive company after I requested the federal government investigate an auto-manufacturer for its statements regarding why it was conducting a recall overseas, but not for similar vehicles in the United States. The manufacturer paid the maximum fine in excess of $16,000,000.00 as a result of my investigation.

47.     In 2011, the Daily Journal selected me as one of five associates to watch in the state of California in its annual 20 under 40 edition. I was the sole plaintiffs' attorney to receive the accolade. I have also been named to Super Lawyers' Rising Stars for Southern California in 2012, 2013 and 2014.

48.     I have tried employment and wrongful death trials and obtained numerous million dollar settlements for my clients. Our firm has tried multiple cases over the last five years and are prepared to take this matter to trial as well.

49.     I have litigated against NBC, Enterprise Rent-A-Car, Spearmint Rhino, Ford Motor Company, Toyota Motor Company, General Motors, Taco Bell, Sony and numerous other large corporations. My practice has included in multiple appellate cases where I have argued successfully before the California Courts of Appeal.

50.     During the course of the Toyota Sudden Acceleration litigation, I was appointed by Hon. Anthony J. Mohr to the Plaintiffs' Steering Committee and was re-appointed in 2012 by

Hon. Lee Edmon. Judge Edmon also appointed me as a member of the national fee committee to recommend the allocations and disbursements of the common benefit fund.

51. In 2012, I took a position with one of the nation's top Class Action law firms, Strange & Carpenter, where I was instrumental in preparing one of the bellwether sudden acceleration cases that resolved in December 2012. That case was a model for the California class claim that resolved along with the national case. Today, I remain in the role as the youngest attorney appointed to the plaintiffs' steering committees in the California Toyota Sudden Acceleration cases.

52. In 2017, I obtained what was then a record Title IX settlement against UC Regents.

53. I was appointed Class Counsel in the matter of *Mankin v. Mountain West Research Center, L.C*., No. 2:13-cv-06447-DSF-AGR in the Central District of California. The class settlement in that matter was approved by Hon. Dale S. Fischer.

54. I was appointed Class Counsel in the matter of *Kim v. Tinder, Inc., et al*., No. 2:18-cv-03093-JFW-AS in the Central District of California. The class settlement in that matter was approved by Hon. John F. Walters. My co-counsel in that matter was Todd M. Friedman, the husband of Lisa Friedman. This matter resolved with a class settlement approximated at $17.3 million.

55. Other than myself, several members of my firm have knowledge of this case and have worked on this case with me with my oversight, including David L. Weisberg and Jesenia A. Martinez.

56. At Strange & Carpenter and since opening Kristensen Weisberg, LLP in 2013, now Kristensen LLP, I have litigated numerous class claims, including privacy cases, illegal phone recording and TCPA claims. I have taken an active role during the pleadings and discovery stages involving individual and class claims.

57. On June 5, 2020, I was appointed Class Counsel in the matter of *Blair v. David Brian Baily, et al.*, case no. 8:19-cv-01849-JFW (ADSx) in the Central District of California by

Hon. John F. Walter. The matter received final approval in December 2020. This case involved claims under the Fair Labor Standards Act, and California labor laws pertaining to worker classification and wage and hour claims. The matter resolved with a settlement of over $2,000,000 for the Class, which was approved and finalized.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on January 22, 2021, in Los Angeles, California.

*/s/ John P. Kristensen*
John P. Kristensen