UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGHAN GEORGE, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>  -v-<br><br>SHAMROCK SALOON II, LLC, d/b/a CALICO JACK'S CANTINA; BLITZ MARKETING, LLC; JOHN L SULLIVAN; and DOES 1 through 20, inclusive, and each of them,<br><br>       Defendants. | CIVIL ACTION NO.: 17 Civ. 6663 (RA) (SLC)<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF**<br>**<u>CLASS ACTION SETTLEMENT</u>** |

**SARAH L. CAVE**, United States Magistrate Judge.

## I. <u>INTRODUCTION</u>

Plaintiff Meghan George ("George"), on behalf of herself and others similarly situated, sued Defendants Shamrock Saloon II LLC, doing business as Calico Jack's Cantina ("Calico Jack's"), Blitz Marketing, LLC, John L. Sullivan, and Does 1 through 20 (collectively, "Defendants"). George alleges that Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 <u>et seq.</u>, by using an automated telephone dialing system ("ATDS") to send promotional text messages to her and others without their consent. The Honorable Ronnie Abrams has certified a class of 67,630 individuals (the "Class") to whom Defendants sent promotional text messages (the "Class Certification Order" (ECF No. 94)).

Before the Court is George's Motion for Preliminary Approval of Class Action Settlement (the "Motion for Preliminary Approval" (ECF No. 128)). The Motion for Preliminary Approval asks the Court to:  (i) grant preliminary approval to the terms of the proposed settlement (the "Settlement") set forth in the proposed settlement agreement (the "Settlement Agreement"), (ii)

provide notice to the Class ("Class Notice"), (iii) appoint a settlement administrator; and (iv) schedule a final approval hearing concerning the Settlement Agreement (the "Fairness Hearing").

For the reasons set forth below, the Court GRANTS the Motion for Preliminary Approval, and schedules a Fairness Hearing on **Tuesday, November 16, 2021 at 10:00 am**.[1]

## II. <u>BACKGROUND</u>

The factual and procedural background of this case is set forth in detail in the decisions of the Honorable Henry B. Pitman recommending class certification, <u>George v. Shamrock Saloon II, LLC</u>, No. 17 Civ. 6663 (RA) (HBP), 2019 WL 8106153 (S.D.N.Y. Aug. 7, 2019) (the "Report & Recommendation"), and in Judge Abrams' Class Certification Order, which adopted the Report & Recommendation, <u>George v. Shamrock Saloon II, LLC</u>, No. 17 Civ. 6663 (RA) (SLC), 2020 WL 133621 (S.D.N.Y. Jan. 13, 2020).  That factual and procedural background is incorporated by reference, and the Court summarizes only the facts necessary for analyzing the Motion for Preliminary Approval, focusing on the circumstances leading up to the parties' Settlement Agreement.

### A. <u>Factual Background</u>

George alleges that, without her consent, Defendants sent numerous text messages to her cell phone advertising "events and food and drink specials at Calico Jack's, a restaurant located in New York City."  <u>George</u>, 2019 WL 8106153, at * 1.  George alleged that, between

---

[1] Judge Abrams referred general pretrial supervision and dispositive motions to the undersigned.  (ECF minute entry Oct. 2, 2019).  Because Judge Abrams "has already certified the class in this matter, the motion for preliminary approval falls within this Court's authority over non-dispositive pretrial matters." <u>Dover v. British Airways, PLC (UK)</u>, 323 F. Supp. 3d 338, 340 n.1 (E.D.N.Y. 2018).  By contrast, "[t]he anticipated motion for final settlement approval . . . is dispositive, and thus this Court will conduct the final fairness hearing and issue a Report and Recommendation for Judge [Abrams'] review."  <u>Id.</u> (citing 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1)).

March 26, 2015 and September 1, 2017, Defendants sent 63 text messages to her without her consent.  (Id.)  To do so, Defendants used a third party, Call Fire, "which created software that allowed [D]efendants to store the phone numbers collected by Calico Jack's and to draft and schedule mass text message promotional campaigns."  (Id.)  Call Fire's records indicated that "over 11 million text messages were sent to [Calico Jack's] customers using its software," and George's expert determined that, between March 26, 2015 and September 1, 2017, "[D]efendants sent text messages to 67,630 unique wireless telephone numbers" for which Defendants had not obtained written consent.  (Id. at *2).

Sometime before the Class Certification Order on January 13, 2020, "Calico Jack's was forced to permanently close for financial reasons, and remains permanently closed . . ."  (ECF No. 131 ¶ 1(e)).  Before the COVID-19 pandemic, Defendant Sullivan, the sole individual Defendant:

> owned five bars in New York City and was an investor in a number of bars across the country, but [] as a result of COVID-19, four of the five bars have permanently closed and have evacuated their respective premises, including Calico Jack's. Those businesses have been permanently shut down, all staff were laid off, and the keys to each of the restaurants w[ere] turned in, with neither any ability nor any intention to reopen.

(ECF No. 128-2 ¶ 17).

### B.  Procedural Background

On September 1, 2017, George filed the Complaint on behalf of herself and a putative class of other individuals who had received Defendants' text messages.  (ECF No. 2).  Litigation was at times contentious, and the parties raised several discovery disputes with the Court.  (See ECF No. 26, 28, 44; see also ECF No. 52 (denying George's sanctions application)).  Discovery included the exchange of written documents between the parties, depositions, production of

third-party records, and consultation with expert witnesses.  (See ECF Nos. 27, 34, 35, 37, 44, 47, 128-1 at 16, 128-2).

On October 9, 2018, the Court held a settlement conference that did not result in a settlement.  (ECF minute entry Oct. 9, 2018).

On August 7, 2019, Judge Pitman issued the Report & Recommendation, recommending that the Court: (i) certify a class of 67,630 individuals to whom Defendants sent promotional text messages between March 26, 2015 at September 1, 2017 using an ATDS without prior written consent; and (ii) appoint Kristensen Weisberg LLP as class counsel ("Class Counsel").  George, 2019 WL 8106153, at *11.

On August 21, 2019, Defendants filed objections to the Report & Recommendation, to which George responded on September 25, 2019.  (ECF Nos. 85, 88).  On October 2, 2019, this action was referred to the undersigned for general pretrial supervision and to issue a report and recommendation concerning dispositive motions.  (ECF minute entry Oct. 2, 2019).

On January 13, 2020, Judge Abrams issued the Class Certification Order, adopting the Report & Recommendation in its entirety.  George, 2020 WL 133621, at *1.[2]

On February 14, 2020, this action was referred for mediation.  (ECF No. 97).  Mediation was scheduled for June 18, 2020 but was adjourned at the mediator's suggestion to allow the parties to exchange documents pertaining to Defendants' financial condition, an issue the parties believed "would have significantly impacted the mediation."  (ECF No. 103).  Mediation was held

---

[2]In the Class Certification Order, Judge Abrams reviewed, and adopted in full, the Report & Recommendation's analysis pursuant to Rule 23(a) and Rule 23(b) — that numerosity, commonality, adequacy, predominance and superiority were met — as well as its determination that ascertainability was satisfied.  George, 2020 WL 133621, at *7–9.

on July 30, 2020.  (ECF minute entry July 30, 2020).  In a September 14, 2020 status report, the parties wrote that at the mediation, they:

> came up with a framework for potentially reaching a resolution, with the remaining question of whether defendants could raise the capital to fund such a settlement . . . [and] set a firm deadline of September 25, 2020 to determine whether sufficient funds can be raised to resolve in the manner outlined at the mediation session.

(ECF No. 109).  In their next status report, dated October 5, 2020, they reported "considerable progress" in their settlement discussions, as a result of which they "have closed the gap down to a five[-]figure difference.  (ECF No. 112).  The following week the parties informed the Court that they had reached a settlement in principle.  (ECF No. 114).

On January 22, 2021, after several extensions, George filed the Motion for Preliminary Approval.  (ECF Nos. 117, 119, 121, 123, 125, 127, 128).  The Motion for Preliminary Approval includes: (i) a supporting memorandum of law (the "Memorandum" (ECF No. 128-1)); (ii) the Declaration of Plaintiff's counsel (who is Class Counsel) John P. Kristensen in support of the Motion for Preliminary Approval (the "Kristensen Declaration" (ECF No. 128-2)); (iii) a settlement agreement and release signed on January 22, 2021 by George and her counsel (the "Partially Executed Settlement Agreement"), which includes as attachments the proposed settlement notice, a postcard notice to be mailed to the Class, and opt-out contact information (ECF No. 128-3); and (iv) George's Declaration in support of the Motion for Preliminary Approval ("George's Declaration") (ECF No. 128-4)).

The Kristensen Declaration acknowledged that Defendants had not yet executed the Partially Executed Settlement Agreement, but would be forthcoming, and would be filed as a supplement to the Motion for Preliminary Approval.  (See ECF No. 128-2 ¶ 2).

On July 23, 2021, the parties filed the Settlement Agreement containing Defendant Sullivan's signature, on behalf of Calico Jack's, Defendants' counsel's signature, as well as the signatures of George and her counsel.  (ECF No. 131).

### C.  Terms of the Settlement Agreement

#### 1.  The Class

On January 13, 2020, Judge Abrams certified the Class, which consists of "67,630 individuals (1) to whom defendants sent promotional text messages between March 26, 2015 and September 1, 2017 using an [ATDS] and (2) from whom defendants cannot affirmatively show that they received prior express written consent to receive such text messages."  George, 2020 WL 133621, at *1 (quoting ECF No. 84 at 10).  (See ECF Nos. 128-2 ¶ 16, 131 ¶¶ 1(c)–(d), 2(f)).

#### 2.  Settlement Benefits, Attorney's Fees and Costs

The Settlement Agreement establishes a $325,000 total "Settlement Fund" to be paid by Calico Jack's for payment of "Class Counsel's fees and costs . . . an Incentive Award to [George] and the Settlement Administration costs[.]"  (ECF Nos. 128-2 at ¶ 17; 131 ¶ 2(g)).

The Settlement Agreement includes the following injunctive relief for the Class Members:

(i)     Within [three] business days of Court approval, Defendants shall permanently delete all cellular telephone numbers belonging to Class Members from its call lists, and shall henceforth cease and desist, and forever refrain from transmitting, or causing the transmission of, any further promotional text messages to Class Members.

(ii)    Any phone numbers maintained by Defendants shall be scrubbed against the National Do Not Call Registry.  If any telephone numbers are found to be listed on the National Do Not Call Registry and Defendants cannot locate[] prior express written consent for the telephone numbers, the telephone numbers shall be permanently deleted.

(iii)   Defendants shall update and improve [their] processes to ensure compliance with the TCPA.

(iv)    Defendants' processes and procedures for TCPA compliance shall be in writing.

(v)    Defendants shall ensure that any third party contracted for text messaging campaigns abides by Defendants' updated and improved TCPA compliance processes.

(ECF No. 131 ¶ 3(b)(i)(1)(a)–(e)).  The Settlement Agreement provides for a $5,000.00 Incentive Award to George for serving as the class representative, and provides for payment of "reasonable" attorney's fees and reimbursement for costs to Class Counsel from the Settlement Fund.  (Id. ¶¶ 3(b)(ii)–(iii)). The exact amount of the attorney's fees and costs is not established in the Settlement Agreement.  (See id. ¶ 3(b)(iii)(1)).

### 3.  Release of Claims

In exchange for the relief described above, George and the Class release Defendants from all claims or causes of action "that relate to or arise out of [Defendants'] alleged use of equipment or methods to contact or attempt to contact [] Class Members by text message to a cellular telephone and/or electronic mail during the Settlement Class Period,[3] including but not limited to claims that relate to or arise out of [Defendants'] use of an [ATDS] or 'artificial or prerecorded voice' as defined in the [TCPA]."  (ECF No. 131 ¶ 3(a)(i)).

### 4.  Claims Administrator Retention & Notice

The parties agree to appoint as the Claims Administrator Postlethwaite & Netterville ("P & N"), which will administer the settlement, distribute Class Notice, and maintain a settlement website (the "Website").  (ECF No. 131 ¶ 4).  As set forth in the Kristensen Declaration, P & N "specializes in providing administrative services in class action litigation, and has extensive

---

[3] "Settlement Class Period" is not a defined term in the Settlement Agreement.  (See ECF No. 131).  The Court construes it to refer to the period between March 26, 2015 and September 1, 2017, based on the Settlement Agreement's definition of "Settlement Class Members."  (See id. ¶ 2(f)).

experience in administering consumer protection and privacy class action settlements." (ECF No. 128-2 ¶ 40).

Under the Settlement Agreement, the Class Notice is to be disseminated by mail after using a reverse lookup to determine the Class Members' addresses from their telephone numbers, which are "the only contact information the [p]arties have for the Class Members." (ECF No. 128-2 ¶ 37; see ECF No. 131 at ¶ 5). The Settlement Agreement also provides for the creation of the Website, and both the mailed Class Notice and the Website provide "the terms of the settlement, information regarding the allocation of attorneys' fees, and specific information regarding the date, time, and place of the final approval hearing." (ECF No. 128-1 at 22; see ECF Nos. 131 ¶¶ 4–5, 128-3 at 21).

### 5. Opportunity to Opt-Out & Object

The Settlement Agreement permits members of the Class to opt-out of the Settlement or object to its terms. They may do so by submitting an opt-out request within 30 days of Class Notice. (ECF No. 131 ¶ 5; see ECF No. 128-1 at 11). Members of the Class "who do[] not opt out and who wish[] to object to the Settlement may do so by filing with the Court and mailing to counsel for the [p]arties, no later than 30 days after the Class Notice Date, a notice of objection and/or request to be heard at the [Fairness] Hearing." (ECF No. 128-1 at 11; see ECF No. 128-3 at 18 (notice to be posted on the Website)).

The objection must be signed and dated, and include: (i) the case information, (ii) the name and contact information of the individual objecting, (iii) an explanation of the basis for the objection, including any supporting documentation; and (iv) a list of other matters in which the individual interposed objections. (ECF No. 128-3 at 18). An individual objecting may also request

permission to speak at the Fairness Hearing by filing a "Notice of Intent to Appear" and mailing a copy to counsel for George and Defendants no later than 30 days after the Notice is mailed.  (Id. at 18–19).

### III. DISCUSSION

**A.  Legal Standards**

    **1.  TCPA**

"'In the interest of reducing the volume of unwanted telemarketing calls, the [TCPA], in relevant part, makes it unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service, . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States.'"  Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 88 (2d Cir. 2019) (quoting King v. Time Warner Cable Inc., 894 F.3d 473, 474 (2d Cir. 2018)) (internal citation omitted).  In enacting the TCPA, Congress expressly found that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy" and that "[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 §§ 5, 12, 105 Stat. 2394 (1991).

The TCPA delegated the authority to implement its requirements to the Federal Communications Commission (the "FCC"), which has interpreted the TCPA to cover text messages.  Melito, 923 F.3d at 88–89 (citing 47 U.S.C. § 227(b)(2); Campbell-Ewald Co. v. Gomez,

577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii).").

The TCPA "includes a private right of action for injunctive relief and damages in the amount of 'actual monetary loss' or '$500 . . . for each such violation, whichever is greater,' to be tripled at the court's discretion if the defendant 'willfully or knowingly violated' the statute." Geismann v. ZocDoc, Inc., 909 F.3d 534, 538 n.2 (2d Cir. 2018) (quoting 47 U.S.C. § 227(b)(3)).

### 1. Preliminary approval of class action settlements

The Court has discretion in approving a proposed class action settlement. In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., No. 14-md-2542 (VSB), 2020 WL 7389330, at *2 (S.D.N.Y. Dec. 16, 2020) (citing Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995)). In exercising that discretion, the Court may give weight to the fact that the parties have chosen to settle, because "[t]he parties and their counsel are in a unique position to assess the potential risks of litigation[.]" Id. (citing Yuzary v. HSBC Bank USA, N.A., No. 12 Civ. 3693 (PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013)).

Approval of a class action settlement generally involves a two-step process. Preliminary approval is the first step in the settlement process, and "simply allows notice to issue to the class and for Class Members to object to or opt out of the settlement." Yuzary, 2013 WL 1832181, at *1; see also Dover, 323 F. Supp. 3d at 348 (describing the two-step process). "After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input." Yuzary, 2013 WL 1832181, at *1 (citing Clark v. Ecolab, Inc., No. 07 Civ. 8623 (PAC) et al., 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)); see Fed. R. Civ. P. 23(e)(2) (requiring a fairness

hearing at which members of the class may be heard to determine if the proposed settlement is "fair, reasonable, and adequate").

"Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties.'" Chang v. Philips Bryant Park LLC, No. 17 Civ. 8816 (LTS) (SLC), 2019 WL 8105999, at *7 (S.D.N.Y. Oct. 23, 2019), adopted by 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020) (citing Clark, 2009 WL 6615729, at *3).  In determining whether to grant preliminary approval, "a court need only find 'probable cause to submit the settlement proposal to class members and hold a full-scale hearing as to its fairness.'" Solis v. OrthoNet LLC, No. 19 Civ. 4678 (VSB), 2021 WL 1904984, at *2 (S.D.N.Y. May 11, 2021) (citing In re Traffic Exec. Ass'n–E. R.R.s, 627 F.2d 631, 634 (2d Cir. 1980)).

**B.**   **Application**

**1.   The Settlement is fair, reasonable, and adequate.**

The Court finds that the Settlement Agreement is fair, reasonable, and adequate, such that it is appropriate to distribute the Class Notice.  See Agropong v. Memon, No. 14 Civ. 7990 (SN), 2020 WL 8083599, at *1 (S.D.N.Y. May 5, 2020) (granting preliminary approval to wage and hour class settlement); Fteja v. Nusret N.Y. LLC, No. 19 Civ. 429 (KHP), 2020 WL 1915325, at *3–4 (S.D.N.Y. Mar. 5, 2020) (granting preliminary approval for settlement within the range of possible settlement approval which was negotiated at arm's length and not collusive); Melito v. Am. Eagle Outfitters, Inc., No. 14 Civ. 2440 (VEC), 2017 WL 366247, at *1 (S.D.N.Y. Jan. 24, 2017) (granting preliminary approval of TCPA settlement, which was determined to be "fair, reasonable and adequate, and within the range of possible approval"), aff'd sub nom Melito v. Experian

Mktg. Sols., Inc., 923 F.3d at 85; Wright v. Stern, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (recognizing that "[a] 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005)).

The Settlement Agreement resulted from extensive negotiations between experienced counsel, with the assistance of a third-party mediator, and following significant discovery, which are all indications of a fair settlement process. See Keurig, 2020 WL 7389330, at *2 (granting preliminary approval after "months-long, good-faith process" mediated by an experienced mediator); Solis, 2020 WL 1904984, at *3 (noting that settlement was aided by a neutral mediator after an intensive investigation and the production of several thousand pages of documents); Yuzary, 2013 WL 1832181, at *2 ("The assistance of an experienced . . . mediator . . . reinforces that the Settlement Agreement is non-collusive.").

The mediator's role in brokering this settlement — involving "tireless efforts," according to George — appears significant.  (ECF No. 128-1 at 9).  Mediation was initially adjourned at the advice of the mediator so the Defendants could produce financial records "in order to create the best possible conditions for achieving a resolution."  (ECF No. 105).  In September 2020, the parties reported that, during their June 2020 mediation, the parties devised "a framework for potentially reaching a resolution," leaving open the manner in which Defendants "could raise the capital to fund such a settlement."  (ECF No. 109).  The parties reported several weeks later narrowing the gap to a "five[-]figure difference," and on October 13, 2020, reported that they had reached a settlement in principle.  (ECF Nos. 112, 114).  Accordingly, the Court accepts

George's representation that settlement discussions were "at all times [] at arm's length and adversarial in nature."  (ECF No. 128-2 ¶ 30).

In addition, the injunctive relief set forth in the Settlement Agreement "furthers the purpose of the TCPA, which is to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls."   Chan v. Sutter Health Sacramento Sierra Region, No. LA CV15-02004 (JAK), 2016 WL 7638111, at *10–12 (C.D. Cal. June 9, 2016) (granting preliminary approval of settlement agreement that provided no monetary relief for the class, but included "relatively meaningful" injunctive relief prohibiting unauthorized text messages by a defendant who "would be unable to pay a substantial class-wide judgment for money damages").  Moreover, the injunctive relief is not limited to the Class— it requires Defendants to permanently delete all phone numbers they maintain that are listed on the National Do Not Call Registry for which Defendants do not have written consent.  (ECF No. 131 ¶ 3(b)(i)(1)(b)).  This injunctive relief is therefore meaningful and of cognizable value.  Cf. Mahoney v. TT of Pine Ridge, Inc., No. 17-80029-CIV (DMB), 2017 WL 9472860, at *10 (S.D. Fla. Nov. 20, 2017) ("The Court agrees that this injunctive relief is not illusory and in fact provides a real benefit to class members in requiring Defendant to stop using a technology of uncertain legality ['drop voicemails' for leaving pre-recorded voicemail messages] under the TCPA.").

Accordingly, because the Court finds, at least preliminarily, that the settlement is fair, reasonable, and adequate, it is appropriate to distribute the Class Notice.

### 2. **The Class Notice is sufficient.**

For any class certified under Rule 23(b)(3),[4] such as the Class here:

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort . . . . The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if [she] so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Class notice "need only describe the terms of the settlement generally," which is a "minimal requirement." In re Michael Milken & Assocs. Sec. Litig., 150 F.R.D. 57, 60 (S.D.N.Y. 1993).

The Class Notice plainly and accurately informs Class Members of information about: (1) the nature of this litigation, the settlement class at issue, the identity of Class Counsel, and the essential terms of the settlement agreement and settlement; (2) Class Counsel's forthcoming application for attorneys' fees and other payments that will be deducted from the settlement fund; (3) how to participate in the settlement; (4) this Court's procedures for final approval of the settlement agreement and settlement; (5) how to challenge or opt-out of the settlement, if they wish to do so; (6) how to contact the Claims Administrator; and (7) how to obtain additional information regarding the Settlement Agreement. (See ECF No. 128-3). Accordingly, having reviewed the proposed Class Notice, the Court finds that the content of the Class Notice and the

---

[4] Rule 23(b) provides that a class action "may be maintained if Rule 23(a) is satisfied and if . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Report & Recommendation granted certification pursuant to Rule 23(a) and (b)(3). George, 2019 WL 8106153, at *11.

proposed plan for its distribution provides the best notice practicable, satisfies the notice requirements of Rule 26(e), and satisfies all other legal and due process requirements.  See Fteja, 2020 WL 1915325, at *4 (approving class notice with substantially similar content); Hernandez v. Between the Bread 55th Inc., No. 17 Civ. 9541 (LJL), 2020 WL 7493202, at *4 (S.D.N.Y. Dec. 21, 2020) (same).

### 3.   Procedures for Final Approval of the Settlement

The Court hereby adopts the following settlement procedure:

1.  P & N is appointed as the Claims Administrator and shall be required to perform all of the duties of the Claims Administrator as set forth in the Settlement Agreement.

2.  The Court approves the procedures for Class Members to participate in, opt out of, or object to the Settlement, as set forth in the Settlement Agreement and in George's Motion for Preliminary Approval.  Class Members will have 30 days from the date the Notice is mailed to opt out of the settlement or object to it.  Any Class Member who wishes to speak at the Fairness Hearing must file a "Notice of Intent to Appear" by the same date.

3.  On **Tuesday, November 16, 2021 at 10:00 am**, the Court will hold the Fairness Hearing to determine whether to grant final approval of the Settlement Agreement.  The Fairness Hearing will be held at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 18A, New York, New York.

4.  George shall file a Motion for Attorney's Fees and Costs and a Motion for Final Approval of Settlement at least 28 days before the Fairness Hearing, that is, by **Tuesday, October 19, 2021**.

5.  The Claims Administrator shall file with the Court no later than 28 days before the Fairness Hearing proof that Class Notice was provided in accordance with the Settlement Agreement.

6.  The parties shall abide by all terms of the Settlement Agreement.

### IV. CONCLUSION

For the reasons stated above, George's Motion for Preliminary Approval (ECF No. 128) is GRANTED.  The Court ADOPTS George's proposed schedule of events related to the Fairness

Hearing and will hold the hearing **in-person** on **Tuesday, November 16, 2021 at 10:00 am** in

Courtroom 18A, 500 Pearl Street, New York, New York.

The Clerk of Court is respectfully directed to terminate ECF No. 128.


Dated:      New York, New York
            July 28, 2021

                                    SO ORDERED.

                                    SARAH L. CAVE
                                    United States Magistrate Judge